## 47624. THAMES v. PIEDMONT LIFE INSURANCE COMPANY.

ARGUED NOVEMBER 6, 1972 — DECIDED MARCH 13, 1973— REHEARING DENIED MARCH 30, 1973 — ▮▮▮

*Hall & Bloch, S. Phillip Brown,* for appellant.

*Anderson, Walker & Reichert, Mallory C. Atkinson, Jr.,* for appellee.

EVANS, Judge. Thames borrowed money from a bank, and his life was insured under a group policy carried by the bank with Piedmont Life Insurance Company. Upon the death of Thames, his widow sued the insurance company. The insurer defended upon the ground that the policy was canceled when plaintiff's husband became more than three months in default as to payment of the bank's indebtedness. Plaintiff contended the policy was not canceled as she had not received notice of cancellation as is required under Code Ann. § 56-2430 (Ga. L. 1960, pp. 289, 671; 1967, p. 653; 1968, p. 1126); to which contention the insurer replied that it was not required to give such written notice because the language in the policy provided that upon her husband's becoming in default with the bank for more than three months, said insurance "automatically terminated."

The question to be decided is quite simple: Is an insurance company allowed to side-step the plain terms of Code Ann. § 56-2430 by the use of the words "automatically terminate" and thus terminate an insurance policy without giving written notice of cancellation?

The above statute sets forth the one and only way in which an insurance policy "which by its terms and conditions may be canceled by the insurer," may accomplish cancellation, to wit: it must give notice in writing to the insured person of the date of cancellation, at least five days prior to the cancellation.

But it is argued that the insurance company may relieve itself of the tedium of giving five days written notice of cancellation, by simply inserting a line in the policy to the effect that upon the happening of a certain event the policy is "automatically terminated." The word

"automatic," it is contended, means that no written notice need be given.

Then why would any insurance company write a policy under which it can cancel its policy only by giving written notice, when the Piedmont Life Insurance Company has devised a magic formula — by the simple scheme of the use of the words "automatic termination" it may completely ignore the plain mandate of the statute as set forth in Code Ann. § 56-2430.

The statute requiring the giving of at least five days written notice of cancellation was enacted in 1960, and during these past 12 years not a single insurance company came up with the device of "automatic cancellation," until Piedmont Life Insurance Company came forward with it in this case. There is not a single decision by the appellate courts of Georgia which holds that insertion of the words "automatic cancellation" will obviate the necessity of giving five days written notice of cancellation as required by Code Ann. § 56-2430.

In *Ga. Farm Bureau Mut. Ins. Co. v. Gordon,* 126 Ga. App. 215 (1) (190 SE2d 447), this court upheld the statute and held that cancellation must be accomplished by sending written notice, and that in order to cancel "it was mandatory to either deliver the notice of cancellation in person or mail it and obtain a receipt from the United States Post Office Department."

In *South Carolina Ins. Co. v. Glennville Bank,* 111 Ga. App. 174, 177 (141 SE2d 168), it was held by this court that the statute as to written notice must be complied with before the lienholder's claim to insurance could be affected. To the same effect is the holding in *Employers' Fire Ins. Co. v. Penna. Millers Mut. Ins. Co.,* 116 Ga. App. 433, 437 (157 SE2d 807); also to the same effect see this same case in 118 Ga. App. 655, 658 (165 SE2d 309).

Code Ann. § 56-2430 was by operation of law written into and became an integral part of the policy of insurance in this case. In *Gulf American Fire &c. Co. v.*

*McNeal,* 115 Ga. App. 286, 292 (154 SE2d 411), Judge Bell, speaking for this court, held: "Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which the statute is applicable, *and in case of conflict between the policy and the statutory provisions the latter control."* (Emphasis supplied). To the same effect see *Nelson v. Southern Guaranty Ins. Co.,* 221 Ga. 804, 807 (147 SE2d 424); *Employers Liability Assur. Corp. v. Hunter,* 184 Ga. 196, 202 (190 SE 598); *Great American Indem. Co. v. Vickers,* 183 Ga. 233, 237 (188 SE 24).

Thus, the policy of insurance in this case contained, by operation of law, a provision that it could be canceled *only upon giving of five days written notice.* The provision inserted therein by the Piedmont Life Insurance Company providing for "automatic cancellation," was in direct conflict with the statute requiring five days written notice, and under the above authorities, the statutory written notice requirement must control.

Therefore, the lower court erred in granting the motion for summary judgment of Piedmont Life Insurance Company based upon the "automatic cancellation" language in the policy.

*Judgment reversed. Deen and Clark, JJ., concur. Hall, P. J., concurs in the judgment. Pannell, J., concurs specially. Bell, C. J., Quillian and Stolz, JJ., dissent. Eberhardt, P. J., disqualified.*

PANNELL, Judge, concurring specially. I concur in principle with the construction given the statute in the dissenting opinion, but am also of the opinion that the "termination," if it occurred while the policy was otherwise in force by payment and receipt of premium would amount to a "cancellation" under the terms of the statute; and notice under the statute would be required. While the evidence shows that the premiums were paid by the deceased to the bank and the unearned premiums were tendered back by the bank, the evidence is silent as

to whether these premiums were paid to the insurer and accepted by it, although it may authorize a finding that the bank was acting as the insurer's agent in collecting the premiums. The termination of the policy prior to the time for which premiums have been paid for insurance *in advance* would, in my opinion, be a cancellation of the contract. Further, the acceptance of premiums with knowledge that payments on the debt were three months in arrears may amount to a waiver of the automatic termination provisions. In either event, the burden is on the movant insurer to show it does not come within the statute here and it must assert its right to summary judgment by proof on its part, not by lack of proof on the part of the plaintiff. The questions posed above show that the proof is not at all clear and the burden being upon the insurer to show all of the circumstances so clearly as to demand a finding in its favor, the trial court, in my opinion, erred in granting the summary judgment. "On motion for summary judgment the burden is on the movant even as to matters which would be upon the opposite party on the trial. *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205, 206 (163 SE2d 256)." *Hotel Storage, Inc. v. Fesler,* 120 Ga. App. 672, 676 (172 SE2d 174); *D. H. Overmyer, Inc. v. Joe Summers Roofing Co., Inc.,* 120 Ga. App. 188, 189 (169 SE2d 821).

BELL, Chief Judge. I dissent and would affirm the grant of defendant's motion for summary judgment. The issue concerns that part of the policy which provides for termination of individual insurance. It states: "The insurance of a debtor shall automatically terminate upon the earliest of the following dates . . . (d) the date the debtor's indebtedness becomes in default for more than three months." It is undisputed that at the time of his death plaintiff's husband's loan accounts had been in default more than three months; and that no written notice of cancellation of insurance under Code Ann. § 56-2430 was ever furnished the deceased. Plaintiff argues

that the failure to give notice of cancellation as required by the above statute operated to continue the coverage. Code Ann. § 56-2430 provides in part: "Cancellation of policy which by its terms and conditions may be canceled by the insurer shall be accomplished as prescribed herein: written notice, stating the time when the cancellation will be effective, . . . ." Defendant's position is that this statute does not apply where the policy as in this case provides for an automatic termination upon the happening of an event specified by the contract. We believe that this contention is correct. The notice of cancellation statute applies to policies where the policy grants the insurer an option to cancel and not in a situation where the contract expressly states that the coverage is "automatically" terminated upon the happening of a specified event. The statute itself clearly enunciates a legislative intent that it only should apply to a "policy which by its terms and conditions *may* be canceled by the insurer." The use of the word "may" in this context implies permission or the exercise of discretion by the insurer when the policy grants to it a right to cancel if it elects to do so. If a right to cancel by the terms of the policy is not exercised, then coverage continues. But here the policy provided for an automatic termination when the insured debtor became more than three months in default. No affirmative action of the insurer was required to effect a termination as opposed to a policy provision which permits the insurer to exercise a right to cancel or terminate if it chooses to do so.

I am authorized to state that Judges Quillian and Stolz concur in this dissent.